**Electronically Filed
Intermediate Court of Appeals
28920
12-SEP-2012
07:55 AM**

NO. 28920

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


KATHLEEN M. CARSTENSEN, Plaintiff-Appellee, v.
RICHARD D. CARSTENSEN, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-DIVORCE NO. 01-1-2705)


MEMORANDUM OPINION
(By: Nakamura, C.J., Leonard and Reifurth, JJ.)

Defendant-Appellant Richard Carstensen ("Richard") appeals from the "Order Re: Defendant's Motion for Relief" ("Order") entered by the Family Court for the First Circuit ("Family Court") on November 28, 2007.[1/] The Order denied Richard's Hawai'i Family Court Rules ("HFCR") Rule 60(b) motion for post-decree relief ("HFCR Rule 60(b) Motion") from the property division portion of the December 10, 2003 Divorce Decree ("Decree"), which dissolved Richard's marriage with Plaintiff-Appellee Kathleen Carstensen ("Kathleen").

On appeal, Richard contends that the Family Court erred in concluding that: (1) he was not equitably entitled to relief pursuant to HFCR Rule 60(b)(5) or (6); (2) his HFCR Rule 60(b) Motion was not brought within a reasonable time; and (3) relief from the divorce agreement could not be granted because its terms were not ambiguous.

We vacate the Order and remand for further proceedings.

---

[1/] The Honorable R. Mark Browning presided.

I.    Background

Kathleen and Richard were married on August 23, 1970. During their marriage, Richard served in and subsequently retired from the United States Air Force.  According to Richard, at the time of the divorce he was receiving $2,446.62 per month of military retirement pay ("Retired Pay") and $1,095.00 per month of military disability pay ("Disability Pay"),[2] totaling $3,554.00 per month.[3]

Kathleen filed for divorce in 2001, and the parties entered into an Agreement Incident to Divorce on November 11, 2003 ("Agreement"), whereby the parties agreed that Kathleen would receive 72% of Richard's Retired Pay.  The Agreement provided that the Family Court "retain[s] jurisdiction over [Richard's] U.S. Air Force retired pay for so long as the parties both shall live" and "shall also have the authority to make every just and equitable order not inconsistent with the other provisions herein[.]"  The Agreement also gave the Family Court explicit "authority to make any orders it deems just and equitable as a result of the income tax consequences which flow from the division and distribution of the retired pay."  The Decree approved and incorporated the Agreement.

The National Defense Authorization Act for Fiscal Year 2004 ("NDAA 2004") was adopted by Congress and became effective on January 1, 2004.  Pub. L. No. 108-136, § 641(e), 117 Stat. 1392 (2003) (codified as amended at 10 U.S.C. § 1414).  The NDAA 2004 amended the federal law governing military retirement benefits for members eligible for Retired Pay who were also eligible for veterans' Disability Pay for disabilities rated 50 percent or higher, and addressed the concurrent payment of Retired Pay and veterans' Disability Pay.  Richard became

---

[2]    Unlike Retired Pay, Disability Pay is not taxed.  In addition, Retired Pay is divisible in a divorce action, while Disability Pay is not. *Jones v. Jones*, 7 Haw. App. 496, 499, 780 P.2d 581, 584 (1989).

[3]    The total of the two figures is $3,541.62, not $3554.00.  As a result, the subsequent calculations are slightly, but not significantly askew. Richard noted that if Kathleen were to receive 50% of both the Retired Pay and the Disability Pay, she would receive $1,770.81, which, he concluded, was 72% of the Retired Pay.

"generally aware" of the new law shortly after it took effect.

Prior to the NDAA 2004's enactment, Retired Pay was subject to a waiver provision whereby a disabled veteran would only receive Disability Pay if he or she waived an equal amount of his or her Retired Pay. 38 U.S.C. § 5305 (2000) amended by Veterans Benefits Improvement Act of 2004, Pub. L. No. 108-454, Tit. III, § 308(b), 118 Stat. 3598, 3614 (2004). Consequently, the total amount of Retired Pay and Disability Pay that any retiree could receive only equaled the Retired Pay to which he was entitled.

The NDAA 2004, however, phased out of the waiver requirement over ten years, resulting in a phased-in increase in the amount of Retired Pay received. 10 U.S.C. § 1414(c). At the end of that period, Richard, who was eligible for both Retired Pay and Disability Pay, would receive both full Retired Pay and full Disability Pay. Consequently, because the Agreement provided Kathleen with 72% of Richard's Retired Pay, Richard contended that the NDAA 2004 as applied to the Agreement bestowed an unintended windfall on Kathleen who would receive 72% of the related increase.

According to Richard, by March 2005 he became aware of the NDAA 2004's effect on his military retirement income and, on March 16, 2005, he wrote to Kathleen stating that the 72% formula contained in the Agreement/Decree was no longer accurate and would need to be recalculated. No informal resolution was ever achieved and, so, on May 14, 2007, Richard filed his HFCR Rule 60(b) Motion seeking relief from the 72% allocation of his Retired Pay to Kathleen as provided for in the Agreement and incorporated into the Decree.

Richard argued that the parties' intent was to provide Kathleen with 50% of the sum of his Retired Pay and Disability Pay, but that because federal law at the time of the Agreement required Richard to waive Retired Pay in order to receive Disability Pay and precluded Kathleen from collecting any part of his Disability Pay, he had proposed to award Kathleen a larger percentage of his Retired Pay in order to effectuate a 50/50 split of the cumulative benefit amount. Richard further argued

that the parties' intent was thwarted by the NDAA 2004 and that this "constituted a material and unexpected change in federal law that impacted the allocation of his retirement pay in a manner that was unfair to him, and resulted in a windfall to Kathleen."[4]

The Family Court denied Richard's HFCR Rule 60(b) Motion because it held that (1) HFCR Rule 60(b)(5) "does not authorize the Court to amend the division of military retired pay after the divorce is final. *See Greene v. Greene*, 8 Haw. App. 559 (1991)"; (2) HFCR Rule 60(b)(6) "does not authorize the Family Court to amend a divorce settlement simply by reason of a subsequent change in the law" under *Hammon v. Monsef*, 8 Haw. App. 58, 64 (1990), that the NDAA 2004 "makes prospective changes (not retrospective) changes in the law[,]" and that a "prospective change in law is not a sufficient reason to justify amending the terms of a divorce pursuant to [HFCR] Rule 60(b)(6)"; and (3) a "delay of more than two (2) years in filing a motion pursuant to [HFCR] Rule 60(b)(6) . . . based on a change in federal law regarding the division of military retired pay is an unjustifiable delay" under *Greene*, 8 Haw. App. at 570, and Richard's "failure to file a motion seeking to amend the terms of the [Agreement] for over three (3) years after the change in federal law is an unjustifiable delay."

II. Discussion

    A.    *Greene* does not prohibit the Family Court from amending the division of military retired pay after the divorce is final under HFCR Rule 60(b)(5).

The Family Court held that relief under HFCR Rule 60(b)(5) was unavailable under *Greene*. Under HFCR Rule 60(b)(5),

---

[4]     Kathleen, on the other hand, contended that she had been awarded a larger percentage of Richard's Retired Pay because she agreed to transfer title to the parties' home to Richard, that the Family Court correctly concluded that the intent of the parties in entering into the Agreement was not relevant, that the Agreement's distribution of Richard's retirement pay was clear and unambiguous, that *Greene v. Greene*, 8 Haw. App. 559 (1991) prohibits the award of relief to Richard under HFCR Rule 60(b)(5), that HFCR Rule 60(b)(6) does not authorize the Family Court to amend a divorce settlement simply by reason of a subsequent change in the law, and that Richard's Rule 60(b) Motion was untimely.

however, a court may grant relief from a divorce decree where prospective application of the decree is no longer equitable. The analogous provision in the Federal Rules of Civil Procedure ("FRCP") Rule 60(b)(5)[5] is "based on the historic power of a court of equity to modify its decree in the light of changed circumstances." 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2863 (2d ed. 1995). The United States Supreme Court explained that:

> We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though it was entered by consent . . . . Power to modify the decree was reserved by its very terms, and so from the beginning went hand in hand with its restraints. If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need.

*United States v. Swift & Co.*, 286 U.S. 106, 114 (1932). The principle enunciated "applies to any judgment that has prospective effect." WRIGHT ET AL., *supra*.

Other courts have applied analogous rules in analogous situations. *See, e.g., California Dep't. of Soc. Servs. v. Leavitt*, 523 F.3d 1025 (9th Cir. 2008) (prospective relief available under FRCP Rule 60(b)(5) from prior judgment, based on the intervening enactment of the Deficit Reduction Act ("DRA") since the DRA removed the legal basis for the continuing application of the court's order); *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112 (4th Cir. 2000) (vacatur of injunction barring enforcement of state law was warranted under FRCP Rule 60(b)(5) in light of substantial legislative revisions to the enjoined statutes); *Harvey v. Johanns*, 462 F. Supp. 2d 69 (D. Me. 2006) (legislation changing the law upon which a forward-looking consent decree was based is ground for relief from prospective enforcement of the judgment under FRCP Rule 60(b)(5)); *Rudd v.*

---

[5] HFCR Rule 60() is similar to Rule 60(b), Hawai'i Rules of Civil Procedure ("HRCP") and FRCP Rule 60(b). "Therefore, the treatises and cases interpreting HRCP, Rule 60(b) and FRCP, Rule 60(b) provide persuasive reasoning for the interpretation of HFCR Rule 60(b)." *Hayashi v. Hayashi*, 4 Haw. App. 286, 290 n.6, 666 P.2d 171, 174 n.6 (1983).

*Rudd*, 666 P.2d 639 (Idaho 1983) (sufficiently changed circumstances rendered enforcement in 1978 of a 1975 divorce decree inequitable under Idaho's analogous Rule 60(b)(5)).

Richard does not challenge the propriety of the property division at the time that the Decree was entered. Rather, Richard seeks modification of the division because the subsequent enactment of the NDAA 2004 allegedly changed the effect of the Divorce Decree in such a way as to make continued enforcement of the 72% provision inequitable.

Citing *Greene*, the Family Court concluded that HFCR Rule 60(b)(5) "does not authorize the Court to amend the division of military retired pay after the divorce is final." The basis for the court's conclusion is unstated. Although it is not clear that *Greene* stands for the stated principle, the case is, in any event, distinguishable in significant respects from this case with regard to the HFCR Rule 60(b)(5) analysis and, therefore, its application for the stated principle is unwarranted.

In *Greene*, this court held that HFCR Rule 60(b)(5) was irrelevant to wife's motion for post-decree relief because she was seeking an "order awarding her an equitable share of [husband's] military retirement benefits." *Greene*, 8 Haw. App. at 566, 815 P.2d at 31. Such an order did not fall under the ambit of HFCR Rule 60(b)(5) because the original divorce decree did not distribute husband's military retirement benefits in the first instance. Here, however, the Family Court has already divided the retirement benefits, awarding 72% of Richard's Retired Pay to Kathleen, and Richard seeks only an order amending the prospective enforcement of the Retired Pay provision because, allegedly, the application of the NDAA 2004 to the Agreement makes continued enforcement of the Decree inequitable. As such, and without determining whether HFCR Rule 60(b)(5) relief was warranted or considering whether Richard's Rule 60(b) Motion was timely, the Family Court erred in concluding that *Greene* precludes relief under the circumstances under HFCR Rule 60(b)(5).

6

B. A change in the law that affects the future obligations of parties toward each other under a judgment where the court has reserved jurisdiction over the subject is "something more than a 'mere' change in the law."

The Family Court held that relief was unavailable under either HFCR Rule 60(b)(5) or 60(b)(6). Movants under HFCR Rule 60(b)(6) must satisfy a three prong test:

> Rule 60(b)(6) permits the trial court in its sound discretion to relieve a party from a final judgment. *Isemoto Contracting Co. v. Andrade*, 1 Haw. App. 202, 616 P.2d 1022 (1980). Such relief is extraordinary and the movant must show that (1) the motion is based on some reason other than those specifically stated in clauses 60(b)(1) through (5); (2) the reason urged is such as to justify the relief; and (3) the motion is made within a reasonable time. 7 Moore's Federal Practice § 60.27[1] (2d ed. 1982).

*Hayashi*, 4 Haw. App. at 290, 666 P.2d at 174.

The Family Court first considered whether Richard's reason for bringing the motion was "such as to justify relief." Concluding that it did not, the Family Court held that:

> 12. Rule 60(b)(6), Hawai'i Family Court Rules does not authorize the Family Court to amend a divorce settlement simply by reason of a subsequent change in the law. "[S]omething more than a 'mere' change in the law is necessary to provide the grounds for Rule 60(b)(6) relief." <u>Hammon v. Monsef</u>, 8 Haw. App. 58, 64 (1990) quoting <u>Ritter v. Smith</u>, 811 F.2d 1398, 1401 (11th Cir. 1987)[.]

> 13. The National Defense Authorization Act for Fiscal Year 2004 that Mr. CARSTENSEN makes [sic] prospective changes (not retrospective) changes [sic] in the law. A prospective change in law is not a sufficient reason to justify amending the terms of a divorce pursuant to Rule 60(b)(6), Hawai'i Family Court Rules.

Neither *Ritter* nor *Hammon*, however, support the conclusion reached in the instant case.[6/] In *Ritter*, the Appellant argued that a supervening change in the law could never

---

[6/] This court in *Hammon*, although incorporating the quotation from *Ritter* that "something more than a 'mere' change in the law is necessary to provide the grounds for Rule 60(b)(6) relief[,]" denied wife's motion, largely because she withdrew her timely-filed appeal from the underlying judgment which would have provided her an opportunity for the relief subsequently requested by the motion. *Hammon*, 8 Haw. App. at 64, 792 P.2d at 314 ("'A party remains under a duty to take legal steps to protect [her] own interests. In particular, it ordinarily is not permissible to use this motion to remedy a failure to take an appeal.' WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2864 (1973).").

present a sufficient basis for relief under FRCP Rule 60(b)(6).
811 F.2d at 1401. The Eleventh Circuit Court of Appeals
disagreed, noting that it had previously allowed Rule 60(b)(6)
relief where there has been a "clear-cut change in the law."
Rather, the court explained that "a change in the law will not
*always* provide the truly extraordinary circumstances necessary to
reopen a case." *Id.* Although the court stated that "something
more than a 'mere' change in the law is necessary to provide the
grounds for Rule 60(b)(6) relief[,]" the court found that
"something more" in the fact – present here as well – that the
court's previous judgment had not been executed.[2/] *Id.*

The *Ritter* court explicitly noted the different
treatment accorded to past effects versus future implications.
"Generally courts have refused to undo the past, executed effects
of the judgments, but they have, almost uniformly, recognized
that it would be unjust to give prospective effect to a judgment
now known to be improper. Thus, they have granted prospective
60(b)(6) relief." *Id.* at 1402.

Richard presented both a "clear-cut change in the law"
and "something more than a 'mere change' in the law" in support
of his Rule 60(b) Motion. As such, and without determining
whether HFCR Rule 60(b)(6) relief was warranted or considering
whether Richard's Rule 60(b) Motion was timely, the Family Court
erred in concluding that relief was unavailable under HFCR Rule
60(b)(6) for the reasons stated.

> C. Whether taking more than three years to file a Rule
> 60(b) Motion was unreasonable under the circumstances
> is not resolved by *Greene*, but must be determined in
> light of all the attendant circumstances.

The Family Court denied Richard's HFCR Rule 60(b)
Motion, in part, because it found the motion to be untimely.

---

[2/]     The Eleventh Circuit found two other factors relevant: (1) "the
fact that there was only minimal delay between the finality of the judgment
and the motion for Rule 60(b)(6) relief[,]" and (2) the close relationship
between the two cases at issue. *Ritter*, 811 F.2d at 1402. The Family Court's
conclusion that Richard's delay in bringing his Rule 60(b) Motion was
unreasonable is addressed in the following section.

14. A delay of more than two (2) years in filing a motion pursuant to Rule 60(b)(6), Hawai'i Family Court Rules based on a change in federal law regarding the division of military retired pay is an unjustified delay. <u>Greene v. Greene</u>, 8 Haw. App. 559, 570 [sic] (1991).

15. Mr. CARSTENSEN's failure to file a motion seeking to amend the terms of the Agreement Incident to Divorce and the Decree for over three (3) years after the change in federal law is an unjustifiable delay.

Both HFCR Rules 60(b)(5) and (6) require that motions be brought "within a reasonable time." "[W]hat constitutes a 'reasonable time' is determined in the light of all attendant circumstances, intervening rights, loss of evidence, prejudice to the adverse party, the commanding equities of the case, and the general policy that judgments be final. 7 Moore's Federal Practice ¶ 60.27[3] (2d ed. 1982); 11 Wright & Miller, *Federal Practice and Procedure: Civil* § 2866 (1973)." *Greene*, 8 Haw. App. at 568-69, 815 P.2d at 32 (quoting *Hayashi*, 4 Haw. App. at 290-91, 666 P.2d at 175)).

In finding the motion to be untimely, the Family Court relied at least in part on this court's decision in *Greene*. In light of the Hawai'i Supreme Court's ruling in *Riethbrock v. Lange*, No. SCWC-28289, 2012 WL 3206339 (Haw. March 16, 2012), however, that reliance was misplaced.

Although we concluded in *Greene* that Hawaii Revised Statues ("HRS") § 580-56(d) did not divest the family court of jurisdiction to decide HFCR Rule 60(b) motions, 8 Haw. App. at 567-69, 815 P.2d at 31-32, we also held that:

In divorce cases where the HFCR Rule 60(b)(6) motion relates to the division of property, the additional impact of HRS § 580-56(d)'s express legislative policy in favor of the finality of judgments and decrees must be considered. The maximum period of time HRS § 580-56(d) allows the family court to retain jurisdiction to divide the property is one year after the divorce decree is entered. It follows that, absent extraordinary compelling circumstances, a party should not be allowed more than one year after the time she knows or should know of her right to seek a change of the division of property in which to initiate her request for a change.

*Id.* at 569, 815 P.2d at 32. The principle at the heart of that conclusion, the one year retention of jurisdiction, follows directly from *Boulton v. Boulton*, 69 Haw. 1, 4-5, 730 P.2d 338, 340 (1986). In *Riethbrock*, however, the supreme court expressly

overruled *Boulton* and held that HRS § 580-56(d) does not limit the family court's jurisdiction to divide the property at issue. *Riethbrock*, No. SCWC-28289, 2012 WL 3206339, *18.

Because *Riethbrock* determines that the family court's post-decree jurisdiction over the distribution of property is not limited under the circumstances, *Greene's* requirement that a court consider this limitation in determining the timeliness of a motion is no longer applicable. Therefore, the Family Court erred in determining that Richard's HFCR Rule 60(b) Motion was untimely inasmuch as it relied upon *Greene* in reaching its conclusion.

Under the analogous Federal Rules of Civil Procedure Rule 60(b)(5), "court[s are] more willing to grant relief if the judgment still is prospective, so that relief from it does not require unscrambling of the past and no rights of third parties are involved." WRIGHT ET AL., *supra*. The very nature of retirement benefits, which are paid out over time for the life of the beneficiary, creates a problem in their effective division and distribution upon the entry of a divorce decree. Although the distribution of these benefits has been treated as property division, the prospective and continuing nature of these payments can be construed as maintenance and support rather than mere division of property. *See Carroll v. Nagatori-Carroll*, 90 Hawai'i 376, 382, 978 P.2d 814, 820 (1999) ("Looking at the substance of the Divorce Decree in the present case, the amounts that Carroll owed ex-wife do not easily fit within any traditional description of 'property division.'"); *see also In re Marriage of Ash*, 658 P.2d 540, 541 (Or. Ct. App. 1983) ("In determining whether an award is a division of property or spousal support, the label given it in the decree is not conclusive.").

The nature of such a provision dividing the future stream of income from a retirement plan weighs in favor of a liberal construction of timeliness especially when the party seeking relief seeks to modify the future payment, rather than past payments, under the provision. *See Ind. Family & Soc. Servs. Admin. v. Hospitality House of Bedford*, 704 N.E.2d 1050, 1061 (Ind. Ct. App. 1998) ("A prospective judgment allowed

10

stability and certainty. Conversely, a prospective judgment may become faulty when the law upon which it is based is altered. The parties and the court contemplated monitoring and revising the order to maintain the proper procedures under the current versions of the regulations. Even absent the reserved ability to reexamine the order as found in this case, [Rule] 60(B)(7) explicitly allows parties to request such review of prospective orders which become inequitable.").8/

The Family Court's express reservation of jurisdiction over the distribution of Richard's retirement pay bears on this final issue as well. The Decree's reservation of jurisdiction recognizes both the continuing nature of the obligation created under the Decree to make payments and the dynamic nature of the federal law concerning military retirement benefits. This reservation weighs against finality of the Decree with regard to the prospective distribution of Richard's retirement pay.

Nevertheless, we do not determine here whether the Family Court erred in concluding that Richard delayed unjustifiably in filing his HFCR Rule 60(b) Motion. Rather we observe that the Family Court's reliance on *Greene* in coming to its earlier conclusion was unwarranted and remand the case to the Family Court for its reconsideration of that issue in light of *Riethbrock* and the other principles enunciated herein, as well as the exercise of its discretion with regard to the relief

---

8/ Indiana's Rule 60(B)(7) discussed in *Hospitality House* is substantially similar to HFCR Rule 60(b)(5). Specifically, the rule provides:

On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons:

. . . .

(7) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or its is no longer equitable that the judgment should have prospective application[.]

*Hospitality House*, 704 N.E.2d at 1060.

available under HFCR Rules 60(b)(5) and 60(b)(6).[9]

III. Conclusion

Therefore, the Family Court's November 28, 2007 Order is vacated and we remand for further determinations consistent with this opinion.

DATED:   Honolulu, Hawai'i, September 12, 2012.

On the briefs:

Robert M. Harris,
for Defendant-Appellant.

Thomas L. Stirling, Jr. and
Lynn M. Youmans
(Stirling & Kleintop)
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

---

[9]   Although the Family Court concluded that its intent in issuing the Decree, rather than the parties' intent, was controlling, it failed to determine what it intended regarding the division of Richard's Retired Pay in the Decree.  On remand, the Family Court shall make specific findings with respect to that issue.